Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED
RECEIVED
LODGED
COPY
JAN 03 2022
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

District of _Arizona_

_Phoenix_ Division

|  |  |
|---|---|
| Vladik S. Uchikura | Case No. **CV22-00002-PHX-DLR** |
| Plaintiff(s) | _(to be filled in by the Clerk's Office)_ |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☒ Yes ☐ No |
| -v- | |
| Willis Towers Watson, (see attached Page 2) | |
| Defendant(s) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Vladik S. Uchikura
Street Address: 2753 E. Broadway Rd, Ste 101-259
City and County: Mesa    Maricopa
State and Zip Code: AZ    85204
Telephone Number: 925-278-8836
E-mail Address: vladik7000@gmail.com

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**Defendant No. 1**

Name                         Willis Towers Watson Call Center — Office location

Job or Title *(if known)*    #

Street Address               1144 W. Washington St. Floor 1-2

City and County              Tempe   Maricopa

State and Zip Code           AZ   85281

Telephone Number             ~~425 298 8836~~  +1 (480) 629-3500

E-mail Address *(if known)*

**Defendant No. 2**

Name                         Gabriel Guzman

Job or Title *(if known)*    Lead, Human Resources Generalist (BDA IM)

Street Address               1144 W. Washington St.

City and County              Tempe   Maricopa

State and Zip Code           AZ   85281

Telephone Number             480-629-3612

E-mail Address *(if known)*  Gabriel.guzman@willistowerswatson.com

**Defendant No. 3**

Name                         Mark Peskin

Job or Title *(if known)*    Pod manager

Street Address               1144 W. Washington St.

City and County              Tempe   Maricopa

State and Zip Code           AZ   85281

Telephone Number

E-mail Address *(if known)*  Mark.Peskin@extendhealth.com

**Defendant No. 4**

Name                         Willis Towers Watson (HQ)

Job or Title *(if known)*

Street Address               51 Lime St.

City and County              London, EC3M-7DQ

State and Zip Code           England

Telephone Number             +44 203 124 6900

E-mail Address *(if known)*

**C.** **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Willis Towers Watson |
| Street Address | 1144 W. Washington St. |
| City and County | Tempe Maricopa |
| State and Zip Code | AZ 85281 |
| Telephone Number | 480-629-3500 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

 ☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

 ☒ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*: Rehabilitation Act of 1973, Civil Rights Act of 1994, Hate Crime, Genetic Information Nondiscrimination Act (GINA).

☒ Relevant state law *(specify, if known)*: Arizona Civil Rights Act (Article 3, 4, & 8)

☐ Relevant city or county law *(specify, if known)*: Arizona Employment Law
ARS 41-1461, ARS 14-1463

**III.   Statement of Claim**

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐  Failure to hire me.

☐  Termination of my employment.

☐  Failure to promote me.

☒  Failure to accommodate my disability.

☒  Unequal terms and conditions of my employment.

☒  Retaliation.

☒  Other acts *(specify)*:  Due to failure of ~~accommodation~~ requested accommodation,

(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

violated breach of contract w/ WTW's clients by allowing me to use mobile phone.

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)
05/20/19 - 11/27/2019

C.   I believe that defendant(s) *(check one)*:

☒  is/are still committing these acts against me.

☐  is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐  race  _____

☐  color  _____

☐  gender/sex  _____

☐  religion  _____

☐  national origin  _____

☒  age *(year of birth)*   1997   *(only when asserting a claim of age discrimination.)*

☒  disability or perceived disability *(specify disability)*
Physical / mental  _____

E.   The facts of my case are as follows.  Attach additional pages if needed.
See attached.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV.   **Exhaustion of Federal Administrative Remedies**

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

   12/13/2019

B.      The Equal Employment Opportunity Commission *(check one)*:

   ☐      has not issued a Notice of Right to Sue letter.

   ☒      issued a Notice of Right to Sue letter, which I received on *(date)*   10/06/2021

   *(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

   Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

   ☒      60 days or more have elapsed.

   ☐      less than 60 days have elapsed.

V.   **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.   See attached.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   01/02/2022

Signature of Plaintiff

Printed Name of Plaintiff   Vladik S. Vchikusa

### B.   For Attorneys

Date of signing:   _____

Signature of Attorney   _____

Printed Name of Attorney   _____

Bar Number   _____

Name of Law Firm   _____

Street Address   _____

State and Zip Code   _____

Telephone Number   _____

E-mail Address   _____

Complaint for employment discrimination -

Defendant(s):

Tempe, Arizona Willis Towers Watson (Office Location & Call Center);

Mark Peskin, Willis Towers Watson (WTW) POD Manager;

Gabriel Guzman, Willis Towers Watson (WTW) Lead Human Resources

Generalist (BDA IM);

Willis Towers Watson (HQ)

EEOC Form 161 (11/2020)

**U.S. E**QUAL **E**MPLOYMENT **O**PPORTUNITY **C**OMMISSION

### D**ISMISSAL AND** N**OTICE OF** R**IGHTS**

To: Vladik S. Uchikura
2753 E. Broadway Rd., Ste. 101-259
Mesa, AZ  85204

From: Phoenix District Office
3300 North Central Ave
Suite 690
Phoenix, AZ 85012

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2019-04746 | Patricia A. Miner,<br>Supervisory Investigator | (602) 661-0040 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☒ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Elizabeth Cadle,
District Director

10/06/2021
*(Date Issued)*

Enclosures(s)

cc: Director
Human Resources
WILLIS TOWERS WATSON
1144 W Washington St
Tempe, AZ 85281



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

For Official Use Only – Charge Number:

EEOC Form 5A (October 2017)

| | |
|---|---|
| **Personal Information** | First Name: Vladik  MI: S  Last Name: Uchikura<br>Address: 2753 E. Broadway Rd, STE 101-259  Apt.:<br>City: Mesa  County: Maricopa  State: AZ  Zip Code: 85204<br>Phone: 925-278-8836  Home ☒ Work ☐ Cell ☒  Email: vladik7000@gmail.com |
| **Who do you think discriminated against you?** | Employer ☒  Union ☐  Employment Agency ☐  Other Organization ☐<br>Organization Name: Willis Towers Watson<br>Address: 1144 W. Washington St.  Suite:<br>City: Tempe  State: AZ  Zip Code: 85281  Phone: 480-629-3500 |
| **Why you think you were discriminated against?** | Race ☐  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☒<br>Disability ☒  Genetic Information ☐  Retaliation ☒  Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of most recent job action you think was discriminatory: 09/05/2019<br>Also describe briefly each job action you think was discriminatory and when it happened (estimate).<br>Please refer to the intake interview conducted on 12/13/2019 with Mark McGarry, case # 540-2019-04746, where I allege discrimination against WTW about denying me reasonable accomodations to work from home due to the inaccessability of the building with supporting PCP docs. I would like to see a Federal Judge for an extension to file due to COVID. |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>I declare under penalty of perjury that the above is true and correct.<br>Signature: Vladik Uchikura  Date: 10/03/21 |

Enclosure with EEOC
Form 161 (11/2020)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day·period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),   **"major life activities"   now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

*Vladik S. Uchikura ( Section III-F )*



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Phoenix District Office

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Phoenix Status Line: (602) 661-0002
FAX (602) 640-5071
Website: www.eeoc.gov

Email: patricia.miner@eeoc.gov
Direct: 602-661-0040

Vladik Uchikura
1111 E. Brown Rd., Apt. 140
Mesa, AZ 85203

RE: 540-2021-04746

Dear Mr. Uchikura,

In follow-up to our email exchange, I am enclosing a Charge of Discrimination (EEOC Form 5A) for your completion. Please return the completed form to me.

Should you have any questions, please let me know. Thank you.

Sincerely,

05/05/2021
_____
Date

Patricia Miner
Supervisory Investigator

Vladik's (Voltz's) WTW Lawsuit Facts (Section III-E)

December 30, 2021

---

- Employed from May 20, 2019 through November 2019
- Gabriel Guzman is HR, Jacob Jungers was my supervisor, Mark Peskin is Jacob's boss aka POD manager
- From the training or the nesting period to the end of employment, WTW immediately started writing me up for attendance points
- After 10 points policy and procedure, that is when Gabe (HR Director) comes in and determines the amount of point due and/or action against the employee
  - Three points is a verbal,
  - Five point is first write-up
  - Eight points the second write-up
  - 10 points termination
- The end of May, I went to urgent care & returned to work the next day with the doctors note and was given a hard time by Gabe and he also had a stern conversation with me
- **<u>Wheelchair Damage from their doors (ongoing to this day)</u>**
  - I was having issues with the electrical system in the joystick of my wheelchair, which I believe was caused

by the heavy doors constantly hitting my joystick because of the lack of ADA buttons within the building

- **Building Operations Director - Lynn– 10/24/19**
  - Suggested I ram the doors with my expensive wheelchair to get in and out of the building and bathroom
  - Already cost me $5000 in repairs to the joystick from the heavy doors continually hitting the chair
  - My chair would intermittently stop so I had to turn it off, wait a few seconds and then turn it on

- **Shoe Incident – 06/19/19**
  - They had a big client coming in and JJ asked me to log out, clock out and go home and change shoes and come back – All Star Converse
  - I refused because they never gave me notice ahead of time and my shoes were never a problem before. In fact, they told me it was okay because I need to wear two different sizes of shoes due to my condition
  - I asked if I could speak to Mark Peskin about this & they made me wait 45 minutes, moved me to the back of the call center out of view of the client. Eventually, they said they would give me that 45 minutes back, and that my shoes were okay

- **Lunch Room Incident –  09/24/2019**

2

- I returned 20 minutes late from my 30 minute lunch and I was pulled into Mark's office right away where he started yelling at me saying things like "don't lie to me!" and "Cut the bullshit Vladik!". I had gone to Safeway and being disability flaring up on me, it took me longer, so I was running late

- Mark was stalking me by watching me leave and enter the building

- They wrote me up for lying in taking a long lunch

- Handicap spots in front are not always available which was closest to my desk – other spots were in the back of the building

- Furthermore, there is no push-to-open button at the front entrance of the building, instead, it's located at the back of the building (segregation to my kind, more-so if you are black and in a wheelchair). However, the button is positioned on the opposite side of the badge scanner, which poses more of a burden and liability for those that are physically handicapped or in any way compromised because you must scan your badge first and then get over to the ADA button in less than 5 seconds. This is nearly impossible for someone in my condition as you will see for yourself should you decide to evaluate the case further and see my face-to-face. This can all be presented in video and email evidence.

3

- o What is more distressing about the bullet point above, is that once you somehow manage to get into the building (front and/or back), you are stuck in the lobby fending for yourself, as there are no more ADA buttons beyond this point, and like a preschooler, I must rely on everyone around me to get past the lobby, to go to the break-room, the bathroom, meeting rooms, lunch rooms, etc...Due to the doors being windowless, a non-suspecting person on the other side may hit you with the heavy door, not knowing you are on the other side, which happened to me multiple times. I started experiencing this type of PTSD on the job due to this fear of getting hit and hurt and having my chair (my legs and my actual legs too) damaged. I still experience this PTSD today when I'm out in public without my aide.
  - o At times I skipped my lunch after this for fear of retaliation and further repercussions.
- **Bathroom Incidents (multiple – Ongoing issue)**
  - o Always had to ask a guard or colleague to help me get in and out of the bathroom like I'm an unwelcome hire. This is humiliating and degrading (on so many human and civil rights levels).
  - o Once I was trapped in the bathroom for 45 minutes because the guard had left for the day and I was trapped with no one to help me because there are no handicapped accessible buttons for the restrooms.

4

Thank God there was not a fire or a fire drill day as my safety would be completely compromised.

- o   I was forced to call Gabe Guzman to help me and he was rude which caused me anxiety – 11/15/2019
- o   Barbara is another disabled employee, and she had to leave her scooter outside the women's restroom and struggle to get in and out, because the doors were not accessible to her either

- **Gabe watched me struggle with door outside**
  - o   09/08/19 -  Gabe while inside, watched me struggle to get in the building from outside and didn't help but once I got inside, he offered me a can of soda as if that would be a gesture of kindness after he watched me struggle in the heat

- **Interrogations (Lengthy and Frequent)**
  - o   Started May 29 until I finally resigned
  - o   The guards would note the time I came into the building and inform my supervisors.  For example, I would arrive at 8:57, but not at my physical desk/workstation until 9:09
  - o   Gabe said he would not agree to this arrangement  - my starting time would be 9:09, not 8:57
  - o   Gabe had to let me in one morning when the guard was not present

5

- o  I once fell in my car, and they gave me points for being late
- o  The outside ADA button & the badge reader are too far apart for handicap access within the few seconds allotted after the badge is read.  This badge reader was also too high for me causing me back and arm pain every time I had to use it
- o  Break-room does not have an ADA button to open the heavy steel door.  I usually had to wait for someone to let me in and out, and I've been trapped in there until someone comes in
- o  In fact, there are no buttons once you are inside the building
- o  Sometimes employees would push the door into me, because they couldn't see me, hitting my head, legs, feet, hands, elbow – it gave me bruises and stomach pain (urgent care), along with anxiety and fear of getting injured
- o  They would pull me out during training between 4 – 5:30 for interrogation sessions.  If I didn't pass the test, they said they would not remove the points and they would fire me. This is sabotage, since I was pulled out of training but still expected to take the test and pass.
- o  Gabe was always threatening and intimidating.

6

- o Gabe would shake his head at Mark right in front of me
- o They were aggressive, hostile, intimidating and created an unsafe (physically and emotionally) work environment
- o They had me in several interrogation sessions, either weekly or twice a week, for 1 – 2 hours on average, but one was 3 ½ hours. Some were on the same topic twice a day, with different management, explaining the same thing over and over again.  They were repetitive and intimidating as they were trying to have me confess to being intentionally late.  They didn't want to acknowledge my mental health issues due to the stress of the continuous daily struggle with their inaccessible building
  - ▪ The objective was figuring out why I was late or coming in later and my thoughts on this
- o I had 2 – 3 kudos from clients (that I knew of, because they repressed them from being displayed on the employee wall) but they only wanted to focus on being late
- I was yelled at for calling the police on a sporty red BMW that was parked in a handicap spot, because WTW didn't do anything.  They said it was <u>not</u> my right to call the police

7

`

- I have videos showing inaccessibility into building and within the building.  As of the last documented date of January 2021, the outside is still not accessible with the badge reader being too far away from the ADA button and too high for someone in a wheelchair. The same inaccessibility issues are still present to the documented date above.

- I have e-mails & Primary account disposition notes (suggested by my mentors at Ability 360)

- The guards helped when they could but they had to patrol the building and were not always available when I needed them – caring for me is not their responsibility, but they were always courteous to me

- Once I fell in my car, I called the guard, she said to call an ambulance because she could not leave her post, and then she hung up on me. I was still docked for being late.

- I was written up for sulking and pouting, saying it was lowering other people's mood

- 09/16 – 09/30 – Badging incident – I was accused of not badging in, but was working with the security guards because of the challenge I had with their badge reader

8

location.   One cannot even get into the building without their badge, so this was not even possible.

- An advocate for the disabled was let go because she had surgery and needed to get up every hour for 10 minutes to walk around, and they wouldn't let her do that

- Ida Barajos (spelling?) was a witness to all this – I still have her phone number in my contacts

- More facts can be provided upon request as well as tangible evidence ranging from videos to pictures, to emails, to documented ADA requests and interactions, as well as first account notes and potential witnesses that may be willing to speak on my behalf.

**<End of notes>**

11/25/2019

To whom it may concern,

After several months of working for Willis Towers Watson, I've come to the conclusion that my services are not appreciated or valued. The accessibility of the building is astonishing. What could easily be a minor alteration, has instead become a scarring battle that has definitely doomed my relationship and future with the company, and ineligibility to be rehired ever again due to the circumstances between employee and employer. Furthermore, even the smallest of accommodations to help make productivity more efficient, Dragon Naturally, was denied. As a consequence, my work life has been physically and mentally intolerable. How these situations have been handled, are nowhere near in favor of my needs, and in no way have I ever felt safe or stable in this work environment. I am truly intimidated to share my real concerns or needs, especially with how the meetings are conducted between me and the HR (ER) Generalist(s). My expressions of concerns, have gone unnoticed or "loopholed", therefore I have taken it upon myself to withdraw my position for my mental and physical sake. If things could have been more accommodating, perhaps a future with this company could have been more successful. My true potential has been inhibited, and the lack of human decency has been made clear in the workplace. I hope for the sake of the other visibly disabled colleagues, that changes are made.  This would ensure that Willis Towers Watson's core values, "Inclusion and Diversity" are upheld, something that was not upheld for my situation and circumstances.

*Sincerely,*

*Vladik U.*

**Willis Towers Watson Reasonable Accommodation Request Form #313005**

*Read this form carefully and fill it out completely.  Failure to do so may cause a delay in reviewing accommodations.  Please print and save all information.*

Associate should complete the required documentation listed below and forward to:
AccommodationRequests@willistowerswatson.com

**REQUIRED DOCUMENTATION:**
- Reasonable Accommodation Request Form
- <u>Authorization Form</u> (associate to sign form)
- Documentation from physician supporting the accommodation request
- Note that should the Job Description detailing the essential functions of the role be needed, it will be obtained by HR

**Review Type:**
☐ One Time Review          ☑ Ongoing Review

**Please Check the Box That Applies**
☐ Employee has physician-imposed restrictions that do not require the employee to be absent from work.
☐ Employee has physician-imposed recommendation that requires a modification to your workstation/work area.
☐ Employee has presented a physician's request for an ergonomic evaluation.

**Employee Information**

| Name (Last, First, MI) | SSN |
|---|---|
| Uchikura, Vladik, S. | 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 |

| Work Telephone # | Home Telephone |
|---|---|
| (480) 735-8276 | (925) 278-8836 |

Occupation

Customer Service Representative

Please provide a brief description of the Restrictions preventing you from performing the duties of your job?

I have Arthrogryposis which is a medical condition that makes me physically disabled. Due to limited ADA access, I cannot get into the building & to my workstation in a timely manner.

List of Accommodations Being Requested:

To be a WFH Agent. If I can work from home, I can continue showing my successful performance, while eliminating the issues with clocking in on time.

Your estimation of the duration of these restrictions  From: Permanent (or until  Through: contract date)

Name, address, and telephone number of your primary attending physician

Central Arizona Medical Associates, 3638 E. Southern Ave. Suite C-108, Mesa, AZ, 85206, (480) 834-0771

**Please enter your supervisor's information below**

| Name (Last, First, MI) | |
|---|---|
| Jungers, Jacob, L | |
| Office Phone Number | Office Email Address |
| | Jacob.Jungers @ extendhealth.com |

Vladik S. Uchikura (Section III-E)

# Central Arizona Medical Associates, P.C.
### 3638 E. Southern Avenue  |  Suite C-108  |  Mesa, AZ 85206
### Phone 480-834-0771  |  Fax 480-834-1136

09/10/2019

Vladik Uchikura
DOB 5/28/97

To whom it may concern:

Vladik is a patient in our practice.  He suffers from arthrogryposis and is wheelchair bound.  He uses a motorized wheelchair for mobility.  He works in a call center environment which is not conducive to his physical needs with his wheelchair.  He is unable to access the door with his own power and physical strength due to his condition.  He relies on a automatic door to enter the building, however, the only automated door has it's control button opposite the employee badge scanner and the door closes too early for Vladik to enter the building.  In addition, there is only one door that is automated in the entire building.  This single automated door is not near his work environment.

Due to his physical constraints, he would be a good candidate to have a work-from-home position to allow him the flexibility to be mobile in his own environment, as his job can be a remote position.

Sincerely,

*Lori Schroder, FNP-C*

Electronically signed by: Lori Schroder FNP-C 9/10/2019

**WillisTowers Watson** |.|'|'|.|

HIPAA: This Authorization has been carefully and specifically drafted to permit disclosure of health information consistent with the privacy rules adopted and subsequently amended by the United States Department of Health and Human Services pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

NOTE TO ALL HEALTHCARE PROVIDERS: The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits Employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

| Employee Name | ADA Request # |
|---|---|
|  |  |

In connection with my request for reasonable accommodation under the Americans with Disabilities Act of 1990, as amended ("ADA"), I hereby authorize the disclosure of the following healthcare information to Willis Towers Watson (my "Employer") and to Metropolitan Life Insurance Co. ("MetLife"). The healthcare information to be disclosed is: information related to my fitness to perform my job, including any restrictions or limitations; information about my prognosis with respect to any such physical limitations; information about what accommodations might be made to enable me to perform the essential functions of my position; and any information relevant to determining whether the existence of a disability covered by the ADA is the reason for the necessity for an accommodation.

The disclosure of the healthcare information may be made to my Employer or MetLife by: any physician or other medical/treating practitioner, hospital, clinic, other medical related facility or service, insurer, employer, government agency, group policyholder, contract holder or benefit plan administrator who receives this authorization. MetLife and my Employer may disclose the healthcare information specified in this authorization to each other.

I give the entities listed above permission to communicate with my Employer or with MetLife in writing or orally, and to release any progress notes, and other medical reports about the healthcare information specified in this authorization. This authorization is for the purpose of enabling my Employer to determine whether I am physically able to perform my job, whether there are any physical limitations that prevent me from performing all of my assigned job duties, whether I am disabled within the meaning of the ADA and whether there are any reasonable accommodations as required by the ADA that would enable me to perform my job.

This Authorization specifically includes my permission to disclose my medical information, records, test results, and data on: medical care, diagnosis or surgery; psychiatric or psychological medical records, but not psychotherapy notes; and alcohol or drug abuse including any data protected by Federal Regulations 42 CFR Part 2 or other applicable laws. Information concerning mental illness, HIV, AIDS, HIV related illnesses and sexually transmitted diseases or other serious communicable illnesses may be controlled by various laws and regulations. I consent to disclosure of such information, but only in accordance with laws and regulations as apply to me. Information that may have been subject to privacy rules of the U.S. Department of Health and Human Services, once disclosed, may be subject to re-disclosure by the recipient as permitted or required by law and may no longer be covered by those rules. I understand that my healthcare provider may not condition my treatment on whether I sign this authorization.

I understand that I may revoke this authorization at any time by writing **both to** Willis Towers Watson at 901 N. Glebe Road Arlington, VA 22203 **and to** MetLife Disability at P.O. Box 14590, Lexington, KY 40511-4590, except to the extent that action has been taken in reliance on it. If I do not, it will be valid for 6 months from the date I sign this form.

A photocopy of this authorization is as valid as the original form and I have a right to receive a copy upon request.

_____     09/10/2019
Signature                                                                    Date



**MAYO CLINIC** 5777 East Mayo Boulevard
Phoenix, Arizona 85054

480-515-6296
mayoclinic.org


Vladik Uchikura
1111 E Brown Rd
Apt 140
Mesa AZ 85203-4965

October 22, 2020
RE: Vladik Uchikura
MC#: 12-426-435
DOB: 5/28/1997


To Whom It May Concern:

Vladik Uchikura is my patient and was last evaluated by myself on 22 October 2020. Vladik has been diagnosed with arthrogryposis which requires use of a wheelchair and make daily activities more difficult. While it does take increased time to complete tasks he is able to complete them given adequate time.

Due to his physical constraints, he would be a good candidate to have a work from home position to allow him the flexibility to be mobile in his own environment as his job can be conducted in a remote location. Please direct any questions to the undersigned, thank you.

Sincerely,

Chance Moyer P.A.-C

Chance Moyer, P.A.-C., M.S.
Division of Community Internal Medicine in Scottsdale, Arizona
13400 E SHEA BLVD
SCOTTSDALE AZ 85259-5452
Dept: 480-301-8087

Section V. (Relief)

1. Violated federal law Genetic Information Nondiscrimination Act (GINA) throughout all 6 months of employment. First incident occurred in training - $75,000.

The other 9 pages of facts list out the many multitudes of this infraction (violation of the federal law GINA) being offended and repeated, each time being of $150,000 as it is a subsequent action of the first incident occurring in training. I think because of the number of incidences, I have calculated that if I worked there for six months, that is approximately 26 weeks, I believe I have experienced about 22 weeks out of the 26 weeks I worked there, they violated this law which would amount to 22 incidents multiplied by $150,000 which equals $3,300,000. The total amount owed for GINA violation is $3,375,000.

2. I believe that Willis Towers Watson (WTW) has violated the Americans with disabilities act of 1990 (ADA)[last revised 2010] law from the beginning day to the end day of my employment. I believe the ADA law has been broken and violated every single day of my employment whether it was a barrier issue or ranging to another issue such as job restructuring, a denial of requested reasonable accommodation(s), or modified schedules, all of which ultimately leads to constructive discharge at the end. Again, if I worked there for six months, converting that to American workdays worked, that would be about 132 days. And I believe I am entitled to punitive, exemplary, and other monetary

damages for this kind of infraction and violation (due to the nature of severity and egregiousness each day worked due to the pattern and frequency of incidences occurring), therefore, if the first day is $75,000, the other 131 days would be multiplied by $150,000 which would equal $19,650,000. The total amount owed for ADA violation is $19,725,000.

3. On top of the ADA and GINA law being broken and violated everyday simultaneously, I believe that Willis Towers Watson violated the Rehabilitation Act of 1973 Section 503 throughout the entire duration of my employment, six months. If we're going to use the same formula of 132 days as my American working days there, the first day violation would be $75,000, the other 131 subsequent days would be multiplied by $150,000 which would equal $19,650,000. The total amount owed for the rehabilitation act violated is $19,725,000.

4. Finally, I believe WTW simultaneously violated the Civil Rights Act of 1994 on top of the other mentioned laws so far simultaneously and everyday. If I worked there for six months, that is 132 days. If the first day is $75,000 violation, the other 131 subsequent days would be multiplied by $150,000 which would equal $19,650,000. The total amount owed for the civil rights act of 1994 is $19,725,000.

5. Because WTW violated federal laws they also violated a number of Arizona employment laws as well as Arizona civil rights act laws and their respective articles. Violating the Arizona employment law the first time is

$55,000 in Maricopa County Superior Court, each subsequent incident is $110,000. Therefore, if the mentioned federal laws were being broken every day, the same formula would apply for state statutes. On my first day of experiencing discrimination and violation of the law being broken would amount to $55,000. The other 131 subsequent days would be multiplied by $110,000 which would equal $14,410,000. The total amount owed for Arizona employment law violation is $14,465,000.

If WTW violated my Arizona civil rights act laws Articles 3,4,&8; every day for six months, converting that to 132 American working days that I did, would mean that the first day violation would be $55,000. The other 131 subsequent days would be multiplied by $110,000 which would equal $14,410,000. The total amount owed for the violation of Arizona civil rights act laws articles three, four, and eight is $14,465,000.

        6. WTW also committed a hate crime against me, sometimes it being violent because of their flagrant indifference to removing physical barriers that pose nothing but a liability to it being non-violent or also known as biased incidents. Because a hate crime is defined as having prejudice towards someone, I believe that all the mentioned federal and state laws that were violated, constitute as a hate crime being committed against me every day, (along to any other peer that looks disabled like me whether they work there or are visiting a colleague that works there). There are two major times where I believe a hate crime was committed against me that was non-violent and one

time that I believe a hate crime was committed against me that was both violent and non-violent. First time offense on federal level is $75,000. The other two subsequent times are multiplied by $150,000 which equals $300,000. The total amount owed for this is $375,000. On state level, the first time is $55,000. The other subsequent two times would be multiplied by $110,000 which would equal $220,000. Total amount owed for this is $275,000.

Total amount owed to plaintiff based on all federal and state laws violated and/or broken: $275,000 + $375,000 + $14,465,000 + $14,465,000 + $19,725,000 + $19,725,000 + $19,725,000 + $3,375,000 = $92,130,000.