**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vladik Uchikura, | No. CV-22-00002-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Willis Towers Watson Call Center, et al., | |
| Defendants. | |

Vladik S. Uchikura ("Plaintiff"), who is proceeding *pro se*, has sued his former employer ("Defendants")[1] for employment discrimination under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the Arizona Civil Rights Act ("ACRA"), and the Tempe City Code.  (Doc. 39-1.)  Now pending before the Court is Defendants' motion to dismiss for failure to state a claim.  (Doc. 45.)  For the following reasons, the motion is granted in part and denied in part.

---

[1]     In his most recent amended pleading, Plaintiff names three Defendants: "Extend Health, LLC," "Willis Towers Watson US, LLC," and "Willis Towers Watson, PLC." (Doc. 39-1 at 2.)  In a footnote, Defendants contend that "[a]lthough Plaintiff has added various Defendants throughout his amended complaints, it does not appear that all named Defendants have been served."  (Doc. 45 at 9 n.10.)  However, Defendants do not seek dismissal for insufficient service of process under Rule 12(b)(5)—the only ground on which Defendants seek dismissal is for failure to state a claim under Rule 12(b)(6).  (Doc. 45 at 1.)  Accordingly, Defendants have waived any service-related objection.  *Schnabel v. Lui*, 302 F.3d 1023, 1033 (9th Cir. 2002); Fed. R. Civ. P. 12(h)(1).  Also, to the extent Defendants contend that the caption should be amended in light of the addition and subtraction of certain defendants since the original complaint was filed (Doc. 45 at 1 n.1), the Court concludes that amendment is unnecessary.  *Hoemke v. Macy's West Stores LLC*, 2020 WL 5229194 (D. Ariz. 2020).

**RELEVANT BACKGROUND**

I.    Facts

The following facts are derived from Plaintiff's Third Amended Complaint ("TAC") and assumed true for purposes of this order.

Plaintiff was hired by Defendants on May 20, 2019.  (Doc. 39-2 ¶ 1.)  Plaintiff has physical impairments that cause him pain and require him to use a wheelchair, specific shoes, and voice-to-text software.  (*Id.* ¶¶ 7, 9-10.)  Plaintiff also suffers from anxiety.  (*Id.* ¶ 3.)

Throughout his employment, Plaintiff was subjected to various forms of disability discrimination.  For example, because the building in which he worked was inaccessible to wheelchairs (specifically, its internal doors lacked ADA buttons and were windowless), Plaintiff could not move freely between rooms without help and was frequently hit by the heavy doors, causing him pain and anxiety and damaging his wheelchair.  (*Id.* ¶¶ 7-8, 11-12, 16.)[2]  Also, because he was afraid of being "trapped" inside the lunchrooms and break areas (and was disciplined when he tried to take lunch off campus but returned late), Plaintiff would sometimes skip lunch.  (*Id.* ¶¶ 11, 14.)[3]  The building's front entrance also lacked an ADA button.  (*Id.* ¶ 11.)  At the back entrance, the ADA button's positioning made it physically difficult for Plaintiff to use.  (*Id.* ¶¶ 11, 16.)  When Plaintiff attempted to mitigate this problem by relying on the security guards to help him enter the building, he was accused of "not badging in" properly; also, because the security guards were not always at their station, he was sometimes stuck outside the building in the "AZ summer heat."  (*Id.* ¶¶ 13, 18, 23.)

For several reasons (including the building's inaccessibility), Plaintiff's disabilities

---

[2]    In one instance, Plaintiff was trapped inside the restroom for 45 minutes "because there are no handicapped accessible buttons for the restrooms" and "the guard had left for the day," so there was "no one to help him."  (*Id.* ¶ 12.)  When Plaintiff called a human resources representative for help, the individual was "rude."  (*Id.* ¶¶ 2, 12.)

[3]    Additionally, when Plaintiff tried other solutions, such as eating lunch with a security guard in the lobby or spending his breaks at other employees' workstations, he was "written up."  (*Id.* ¶ 21.)

sometimes caused him to be late to work.  (*See, e.g.*, *id.* ¶¶ 11, 14-15, 18-19.)[4]  When this happened, Plaintiff was "given a hard time," yelled at by a supervisor, accused of lying, subjected to "interrogation sessions" (which impeded his ability to attend trainings), and targeted with disciplinary write-ups.  (*Id.* ¶¶ 2-4, 6, 11, 14-15.)  Additionally, Plaintiff asserts that he requested (and was denied) access to the "Dragon Naturally Speaking software," which he needed because typing is physically difficult for him.  (*Id.* ¶ 10.)

Ultimately, on November 25, 2019, Plaintiff resigned.  (*Id.* ¶¶ 1, 14.)

On December 13, 2019, Plaintiff met with an investigator at the Equal Employment Opportunity Commission ("EEOC") for an intake interview.  (*Id.* ¶ 28.)  However, the EEOC investigator told Plaintiff that he "would need to hire legal counsel in 45 days or less in order to proceed with filing a charge of discrimination."  (*Id.* ¶ 29.)

On October 3, 2021, Plaintiff filed a charge of discrimination with the EEOC.  (Doc. 12 at 8.)[5]

On October 6, 2021, the EEOC issued Plaintiff a Right to Sue ("RTS") letter,

---

[4]  Plaintiff's disabilities contributed to his lateness in a variety of ways—handicapped parking spots were not always available; if the security guards were not posted at the back entrance when Plaintiff arrived, he struggled to enter the building; once Plaintiff was late coming back from lunch because "his disability was flaring up on him, [so] it took him longer"; the door between the lobby and the call center itself lacked an ADA button; and "[h]e once fell in his car" and, when he called security for help, the guard "said to call an ambulance because she could not leave her post."  (*Id.* ¶¶ 11, 14-15, 18-19.)  Plaintiff also missed a day of work because he went to urgent care; when he returned to work the following day, he was told "a doctor's note was not an excusable form of absence."  (*Id.* ¶ 6.)

[5]  This information does not appear in Plaintiff's TAC.  (Docs. 39-1, 39-2.)  However, the charge form was attached to Plaintiff's First Amended Complaint ("FAC").  (Doc. 12 at 8.)  Although the TAC superseded the FAC as the operative complaint, the October 3, 2021 date was discussed in the Court's previous order (Doc. 30 at 14), Defendants' motion repeatedly references the FAC (*see, e.g.*, Doc. 45 at 7), and both sides assert a number of arguments that depend on the date that Plaintiff filed the charge.  (*See, e.g.*, Doc. 45 at 3-5; Doc. 46 at 3-5.)  Also, the charge form (Doc. 12 at 8) is a public record whose accuracy is not in dispute.  *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (courts "may take judicial notice of 'records and reports of administrative bodies'") (citation omitted).  *See also Griggs v. Sacramento City Unified Sch. Dist.*, 2021 WL 1614405, *1 (E.D. Cal. 2021) (courts may take judicial notice of "EEOC charges and right-to-sue letters"); *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013) (judicial notice of EEOC charge form was "appropriate" because it is a "public record[] whose accuracy is not in dispute").  Thus, although neither side asks the Court to do so, in view of deciding the issues on their merits, the Court takes judicial notice of the charge form.

informing him that the EEOC was closing his case because his charge was not timely filed. (*Id.* at 7 ["[I]n other words, you waited too long after the date(s) of the alleged discrimination to file your charge."].)[6]

II.   Procedural History

On January 3, 2022, Plaintiff initiated this action.  (Doc. 1.)

On May 20, 2022, before serving any Defendant with the original complaint (and after obtaining an extension of time to effect service, *see* Doc. 11), Plaintiff filed his First Amended Complaint ("FAC").  (Doc. 12.)

On June 13, 2022, the then-current slate of Defendants moved to dismiss the FAC. (Doc. 17.)  After a full briefing (Docs. 28, 29), the Court dismissed the FAC but granted Plaintiff leave to file a Second Amended Complaint ("SAC").  (Doc. 30 at 27.)[7]

On January 30, 2023, Plaintiff filed a motion to amend (Doc. 34), with a proposed SAC attached to the motion (Doc. 34-1).[8]  Although the SAC indicated that Plaintiff's factual allegations were in an attached exhibit (*id.* at 4-5), no such document was attached. Thus, the Court denied the motion to amend as moot, ordered the Clerk to file Doc. 34-1 as the SAC, and dismissed the SAC with leave to amend.  (Doc. 35.)

On February 14, 2023, Plaintiff filed a motion to amend the SAC (Doc. 39), with a proposed TAC (Doc. 39-1) and a document containing Plaintiff's factual allegations attached (Doc. 39-2).[9]

On February 21, 2023, the Court denied Plaintiff's motion to amend the SAC as moot and directed the Clerk to file the document at Doc. 39-1 as the TAC.  (Docs. 40, 41.) However, it appears that the Court erred by directing the Clerk to file only Doc. 39-1 and

---

[6]   For the same reasons as the charge form, the Court takes judicial notice of the RTS letter.  (Doc. 12 at 7.)

[7]   On December 18, 2022, Plaintiff asked for an extension of time to file the SAC (Doc. 31), which the Court granted (Doc. 32).

[8]   Plaintiff filed a duplicate motion to amend the FAC (Doc. 33), which was also denied as moot (Doc. 35).

[9]   Plaintiff filed two duplicate motions to amend the SAC (Docs. 37, 38), which were also denied as moot (Doc. 40).

not Doc. 39-2 as well, which contains Plaintiff's factual allegations.  In their motion to dismiss, Defendants note this error and respond as though Plaintiff's TAC includes both Doc. 39-1 and Doc. 39-2.  (Doc. 45 at 1 n.2.)  The Court will do the same.

On March 14, 2023, Defendants filed the pending motion to dismiss the TAC.  (*Id.*) The motion is now fully briefed.  (Docs. 46, 47.)[10]

## DISCUSSION

I.   <u>Legal Standard</u>

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted).  However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

The Ninth Circuit has instructed that courts must "construe *pro se* filings liberally," "particularly in civil rights cases." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted).  Conclusory and vague allegations, however, will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  A liberal interpretation may not supply essential

---

[10]   Plaintiff requested oral argument (Doc. 46 at 2, 4), but the Court will deny the request because the issues have been fully briefed and oral argument would not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

elements of the claim that were not initially pleaded.  *Id.*

II.     Preliminary Matters

        In the TAC, Plaintiff asserts claims under the ADA, the Rehabilitation Act, the ACRA, and the Tempe City Code.  (Doc. 39-1 at 3.)  In their motion, Defendants provide several reasons why the Rehabilitation Act and Tempe City Code claims fail under Rule 12(b)(6).  (Doc. 45 at 10-13.)  In his response, Plaintiff agrees that his Rehabilitation Act and Tempe City Code claims should be dismissed.  (Doc. 46 at 10.  *See also id.* ["Plaintiff realizes and agrees conclusively that the Rehabilitation Act and the City of Tempe City Code on anti-discrimination as a whole is inapplicable to TAC. . . .  To reiterate once more, based on Plaintiff's independent research and interpretation, Plaintiff now cognizably realizes the Rehabilitation Act and the City of Tempe City Code on anti-discrimination are not causes of action Plaintiff can pursue as Claims in [his] TAC."], emphasis omitted.)  Accordingly, the Court dismisses Plaintiff's Rehabilitation Act and Tempe City Code claims without leave to amend.

III.    Administrative Exhaustion

        A.      **The Parties' Arguments**

        Defendants contend that Plaintiff failed to administratively exhaust his ADA and ACRA claims because he did not file a timely charge with the EEOC.  (Doc. 45 at 3, 11.)  Defendants further argue that this failure is not excused by equitable tolling because Plaintiff's factual allegations do not demonstrate diligence.  (*Id.* at 3-5.  *See also id.* at 4-5 ["[The] TAC still does not . . . explain[] his lack of diligence in not contacting the EEOC for a year and a half after the EEOC allegedly told him of this 45-day requirement to retain an attorney."].)  Additionally, Defendants contend that the TAC "does not state that the EEOC told Plaintiff he could not file a charge without counsel, or otherwise shed light on how this alleged misrepresentation caused Plaintiff to fail to file a timely charge, thereby failing to exhaust his administrative remedies."  (*Id.* at 4.)[11]

        In response, Plaintiff does not dispute that he failed to file a charge within 180 or

----

[11]     Defendants filed a short reply, reiterating the same position.  (Doc. 47 at 1.)

300 days of the last date of alleged discrimination, as required under the ACRA and the ADA, respectively.  (*See generally* Doc. 46.)  Instead, emphasizing his *pro se* status, Plaintiff contends that, under the doctrine of equitable tolling, the Court should find that he "did indeed diligently exhaust all administrative remedies despite the numerous and challenging obstacles faced in the process."  (*Id.* at 2.)  Plaintiff argues that his allegations support equitable tolling because they reflect that he diligently pursued his claims, was misinformed by the EEOC investigator (who said that Plaintiff needed to hire an attorney before filing a charge), and relied on that misinformation to his detriment.  (*Id.* at 3-4.) Plaintiff also contends that equitable tolling is appropriate because he "made every attempt possible to pursue a charge while struggling . . . [to] navigat[e] . . . the unprecedented COVID-19 virus" and "attempting to mitigate [his] economic losses from the constructive discharge Plaintiff experienced/faced from Defendants[]."  (*Id.* at 4, emphasis omitted.  *See also id.* at 5 ["[T]he COVID-19 lockdown and its interference with the world and job market[] took a toll on the Plaintiff's health, job insecurity, and economic situation . . . and prevented the Plaintiff from contacting the EEOC again until April 2021."].)[12]  Despite these challenges, Plaintiff contends that he "still somehow managed to beat the odds against him."  (*Id.*)[13]

B.    **Analysis**

For the reasons explained in a previous order (Doc. 30 at 13, 22), Plaintiff was required to administratively exhaust his ADA and ACRA claims by filing a charge with either the EEOC or the Arizona Civil Rights Division ("ACRD") within 180 or 300 days

---

[12]    Plaintiff also contends that, in January 2020, he "was a part of a massive company layoff"; thus, Plaintiff was struggling to find "yet *another* job" during "the heart of the unprecedented COVID-19 virus." (Doc. 46 at 4.)

[13]    In his response, Plaintiff asserts that he did "as the EEOC instructed Plaintiff to do" by "retaining" counsel "within 45 days of the intake meeting." (Doc. 46 at 4.) This assertion conflicts with the exhibits that Plaintiff recently filed, which suggest that Plaintiff did not first consult with an attorney until April 2021. (Doc. 44 at 3.) Thus, the Court does not consider the assertion in Plaintiff's response brief that he "retain[ed]" counsel "within 45 days of the intake meeting." (Doc. 46 at 4.) With that said, if Plaintiff *did* retain an attorney within 45 days of his intake interview, this would undermine Plaintiff's diligence arguments, as Plaintiff provides no reason why his retained counsel was unable to file a charge until October 2021, nearly two years later.

of the last act of alleged discrimination.  Neither side disputes these requirements.  Reading the TAC in the light most favorable to Plaintiff, the last act of alleged discrimination (specifically, constructive discharge) occurred on November 27, 2019.[14]  The parties agree that Plaintiff did not file a charge with the EEOC until October 3, 2021, well outside the relevant limitations periods.

Although the charge-filing requirement is mandatory in the sense that a court must enforce the rule if timely raised, *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019), "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  *See also O'Connor v. Soul Surgery LLC*, 2022 WL 4017408, *4 (D. Ariz. 2022) ("The Ninth Circuit honors EEOC mandatory filing rules . . . absent 'any equitable consideration to the contrary.'") (citation omitted).  Accordingly, Plaintiff may avoid dismissal by "plead[ing] facts supporting equitable tolling, or some other saving doctrine." *Mallard v. Battelle Energy All., LLC*, 2013 WL 2458620, *7 (D. Idaho 2013). Here, because neither side suggests that estoppel or waiver apply, the Court limits its analysis to equitable tolling.

In the TAC, Plaintiff alleges, in relevant part:

> As a result of the misleading and incomprehensible instructions provided by the EEOC to Plaintiff on the next steps of his charge, the EEOC lost Plaintiff's case . . . , resulting in the 300 days statues [sic] of limitations to be exceeded (despite Plaintiff having an interview with an intake/investigator officer on 12/13/2019 at 12:45 PM), and therefore dismissed Plaintiff's case . . . without investigation giving Plaintiff a Right to Sue (RTS) letter because of a lack of jurisdiction on 10/06/2021. . . .

> Specifically, [the] EEOC intake investigator misled the Plaintiff by stating that Plaintiff would need to hire legal counsel in 45 days or less in order to proceed with filing a charge of discrimination (see Exhibit 1) and therefore, Plaintiff reasonably relied on the EEOC intake investigator's misinformation

---

[14]     Like the FAC, the TAC provides conflicting information about the "last date" of the alleged discriminatory conduct. (*See, e.g.*, Doc. 39-1 at 4 [discrimination occurred until November 27, 2019]; Doc. 39-2 ¶¶ 1, 14 [Plaintiff resigned on November 25, 2019]; *id.* ¶ 27 [the "last date of alleged discrimination" described as September 10, 2019].)  For purposes of this order, the Court will assume that the latest date—November 27, 2019 (Doc. 39-1 at 4)—is the correct one.

to his detriment.  As a result, this interfered with Plaintiff's ability to timely exhaust his administrative remedies.

(Doc. 39-2 ¶¶ 28-29, emphasis omitted.)  Based on these allegations, Court interprets the TAC as alleging one possible basis for equitable tolling—that Plaintiff was misled by the EEOC intake investigator into believing that he would be only allowed to file a formal charge of discrimination if he first hired counsel.[15]

Because the legal standards governing equitable tolling differ between Plaintiff's ADA claim (to which federal law applies) and his ACRA claim (to which Arizona's equitable tolling rules apply),[16] the Court addresses each claim in turn.

### 1.   ADA Claim

"Equitable tolling focuses on a plaintiff's excusable ignorance and lack of prejudice to the defendant."  *Leong v. Potter*, 347 F.3d 1117, 1123 (9th Cir. 2003).  "The equitable tolling doctrine has been applied by the Supreme Court . . . sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was

---

[15]   For reasons discussed in the Court's previous order, Plaintiff's conclusory allegation that the EEOC "lost" his case does not support a claim for equitable tolling.  (Doc. 30 at 20 ["Plaintiff alleges the EEOC 'lost [his] case' but provides no supporting details.  These conclusory allegations do not, on their own, support a claim for equitable tolling."].)

[16]   "When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).  "[S]tatutes of limitations are substantive in nature" and "tolling provisions are treated as an integral part of a statute of limitations"; thus, "district courts must apply whatever tolling provisions are recognized under state law."  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 528 (9th Cir. 2011) (cleaned up).  *See also Cox v. Glob. Tool Supply LLC*, 2022 WL 4356915, *4 (D. Ariz. 2022) ("Arizona's equitable tolling rules apply to ACRA claims."); *Reed v. Pioneer Landscaping Materials Inc.*, 2010 WL 11515553, *2 (D. Ariz. 2010) ("Where a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions, to the extent these are consistent with federal law.  Under federal law, equitable tolling is only appropriate where the plaintiff demonstrates that he pursued his rights diligently, but extraordinary circumstances stood in his way.  Arizona courts apply equitable tolling when there are sufficiently equitable circumstances or extraordinary circumstances beyond the plaintiff's control.  Because extraordinary circumstances are required under either rule, the Arizona rule is consistent with the federal rule and should be applied in this case.") (internal quotation marks and citations omitted).

clearly inadequate." *Scholar v. Pac. Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992). "Courts have been generally unforgiving, however, when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." *Id.* at 268 (internal quotation marks and citation omitted). *See also Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). Plaintiff bears the burden of alleging facts that, assumed true, demonstrate the applicability of equitable tolling. *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and remanded sub nom. United States v. Wong*, 575 U.S. 402 (2015).

In the Ninth Circuit, "[a]n equitable exception to the exhaustion requirement is available when an EEOC representative misleads the plaintiff concerning his claim." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1054 (9th Cir. 2006). *See also Chand v. Regan*, 2023 WL 375946, *2 (N.D. Cal. 2023) ("Ninth Circuit courts have invoked . . . equitable tolling to waive exhaustion requirements in circumstances where plaintiffs aver they were affirmatively misled as to their ability to seek administrative remedies."). Specifically, equitable tolling applies where the plaintiff "(1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time." *Josephs*, 443 F.3d at 1054 (citation omitted).

Here, Defendants do not dispute that Plaintiff was acting *pro se* at all relevant times. Also, Plaintiff has plausibly alleged that he was misinformed as to his ability to file a charge. (Doc. 39-2 ¶ 29.)[17] Thus, the second and fourth *Josephs* factors are met. However, as Defendants note (Doc. 45 at 4), the allegations in the TAC regarding the other two

---

[17]    The Court disagrees with Defendants' contention that the TAC does not allege that "the EEOC told Plaintiff he could not file a charge without counsel." (Doc. 45 at 4.) The TAC alleges that the EEOC investigator "stat[ed] that Plaintiff would *need* to hire legal counsel in 45 days or less *in order to proceed with filing a charge* of discrimination." (Doc. 39-2 ¶ 29, emphases added.) Liberally construed, this statement alleges that the investigator told Plaintiff he could not file a charge without counsel.

factors—that Plaintiff "reasonably relied on the EEOC intake investigator's misinformation to his detriment" and that such reliance "interfered with Plaintiff's ability to timely exhaust his administrative remedies" (Doc. 32-9 ¶ 29)—are bareboned and conclusory. Without any supporting details, the allegations in the TAC do not, standing alone, support a claim for equitable tolling. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ivey*, 673 F.2d at 268 (a liberal interpretation of a *pro se* pleading may not supply essential elements of the claim that were not initially pleaded).

With that said, in the TAC, Plaintiff references an "Exhibit 1." (Doc. 39-2 ¶ 29). However, no such exhibit was attached to the TAC. According to Defendants, at the parties' meet-and-confer on March 7, 2023, they told Plaintiff that the referenced exhibit was missing. (Doc. 45 at 2 n.3.) In response, "Plaintiff advised he would seek to file two exhibits as they corroborated that he was misled by the EEOC. . . . Three days later, on March 10, 2023, Plaintiff filed Doc. 44, consisting of Exhibit 2 and Exhibit 1." (*Id.*)[18]

These developments raise the question whether the Court may consider the materials filed by Plaintiff at Doc. 44 when evaluating the sufficiency of the TAC. "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. Here, although the materials lodged at Doc. 44 were not attached to the TAC, and "Exhibit 2" was not referenced in the TAC, it is clear

---

[18]     Defendants state that they "advised Plaintiff that only one exhibit was referenced in Doc. 39-2 and no Exhibit 2 was referenced . . . [and] that regardless of attaching allegedly supporting exhibits, Plaintiff would have needed to plead the relevant allegations he wanted the Court to consider in his TAC." (Doc. 45 at 2 n.3.) However, Defendants do not appear to assert these arguments in their motion—to the contrary, and as discussed in more detail *infra*, Defendants base some of their dismissal arguments on the contents of the exhibits.

that Defendants were aware of them—indeed, in their motion, Defendants argue that "[t]his email correspondence demonstrates Plaintiff's lack of diligence in pursuing his claims against Defendant." (Doc. 45 at 2 n.3.) Thus, it seems unlikely that either side would be prejudiced by the Court considering the emails in its equitable tolling analysis (particularly where the inefficient alternative would be to grant Defendants' motion to dismiss the TAC but grant Plaintiff leave to file yet another amended pleading containing the details referenced in the emails). Accordingly, and given Plaintiff's *pro se* status, the Court treats both exhibits lodged at Doc. 44 as if they were properly attached to (or otherwise incorporated by reference in) the TAC.

Both exhibits contain email correspondence between Plaintiff and the EEOC. (Doc. 44.) First, on April 20, 2021, Plaintiff received an email from EEOC Investigator Patricia Miner. (*Id.* at 3-4.) Investigator Miner indicated that she was responding to "a message [she] received in which [Plaintiff was] requesting to speak with Investigator Mark McGarry." (*Id.* at 4.) After explaining that Investigator McGarry had left the agency, Investigator Miner stated: "It appears that he conducted an intake interview with you . . . related to the above-referenced inquiry; however, you did not pursue the filing of a Charge of Discrimination and the inquiry was closed." (*Id.*) On April 22, 2021, Plaintiff responded:

> When I spoke with Mr. McGarry, he told me that I needed to have a lawyer in order to pursue the filing of a charge of discrimination, basically that I needed to have the funds to pursue, and if I got my ducks in a row within 90 days, he told me that a lawyer could do the same thing that he was able to do. In other words[,] if Mr. McGarry were to file a charge of discrimination, within a 90 Day timeframe, I needed to have a lawyer ready to represent me, otherwise the case would be dropped. Was I misinformed? At the time I was speaking with Mr. McGarry, I barely had any money. I lost my job shortly after speaking with Mr. McGarry and had no financial means of getting a lawyer within 90 days and have them file the charge of discrimination. Can a lawyer even file a charge of discrimination like an EEOC investigator? At the time I really had no idea, I was desperate for help, and had very little resources when it came to finance or legal. I finally have had some financial means to speak with a Zoldan lawyer on April 20, 2021 for one hour. They told me that if I do not have a case open with EEOC, the lawyer cannot legally pursue. I really hope I'm not being misinformed by anybody, I'm just trying to get help with my case and possibly be heard about the wrongdoings that occurred to me. Is there a way for you to re-open this case so my lawyer can help me? Or would it be better to open a new case, using the discovery rule since I'm now past the 180 days statute?

(*Id.* at 3.)  Investigator Miner replied that same day, reiterating the 300-day deadline but qualifying that "[i]f you wish to file a Charge of Discrimination against [Defendants], please let me know and I will send you the form to complete.  Once we receive the completed form, we will process it - close the case and issue you a Notice of Right to Sue which will allow you to file suit in federal court.  It will be up to the court to make the decision as to whether or not you can proceed." (*Id.* at 1-2.)  Plaintiff responded the same day, stating: "I would like to file a charge of discrimination against [Defendants], please go ahead and send me the form to complete, and I will get it completed as quickly as I can and send it back." (*Id.* at 1.)

Next, on November 12, 2021, more than a month after filing a charge and receiving his RTS letter (Doc. 12 at 7-8), Plaintiff emailed Investigator Miner again, this time asking for assistance in finding a lawyer.  (Doc. 44 at 8 ["I would like to know which US court district can see my case, and how I can get some lawyer referrals from that court."].)[19]  On November 15, 2021, Investigator Miner responded with a list of attorneys.  (*Id.* at 7.)[20]  On November 23, 2021, Plaintiff sent another email to Investigator Miner, reiterating his frustration with Investigator McGarry's misleading instructions.  (*Id.* at 6-7.)

In short, Exhibits 1 and 2 provide a number of facts that are not alleged in the TAC, including that Plaintiff did not have the financial means to meet with an attorney about his claims until April 20, 2021.

Returning to the merits, as discussed, the second and fourth *Josephs* factors are met based on the allegations in the TAC: Plaintiff was acting *pro se* and was misinformed by the administrative agency responsible for processing his charge.  As for the third factor (*i.e.*, reasonable reliance on that misinformation that caused the failure to exhaust), the TAC and the emails support the following narrative: (1) on December 12, 2019, at

---

[19]     Additionally, on October 12, 2021, Plaintiff received an out-of-office reply from Investigator Miner, suggesting that he emailed her that day.  (Doc. 44 at 8-9.)  However, his email is not included at Doc. 44.

[20]     Investigator Miner's email indicates that Plaintiff also left her a voicemail on the same topic.  (*Id.* at 7.)

Plaintiff's intake interview, the EEOC investigator told Plaintiff that he would need to hire an attorney to file a charge and pursue his claims against Defendants; (2) at that time, Plaintiff did not have the financial means to do so; (3) on April 20, 2021, Plaintiff finally met with an attorney, who informed him that he needed to file a charge with the EEOC before pursuing his claims in court; (4) shortly thereafter, Plaintiff attempted to contact Investigator McGarry; and (5) on April 22, 2021, after Investigator Miner followed up, Plaintiff explained his previous belief that he needed to hire an attorney before filing a charge, asked for a charge-filing form, and expressed his intent to file a charge "as quickly as I can." (Doc. 44 at 1.) These facts, if true, suggest that Plaintiff was misinformed as to his ability to file a charge, that he reasonably relied on this information, and that this reliance was the cause of his failure to timely comply with the relevant exhaustion deadlines.

As for the first *Josephs* factor, "diligence is a fact-specific inquiry." *Fue v. Biter*, 842 F.3d 650, 654 (9th Cir. 2016). Here, it is helpful to separate the relevant timeline into two parts. The first spans from November 27, 2019 (*i.e.*, the last date of alleged discrimination) to April 20, 2021, when, according to Plaintiff, he was first able to speak with an attorney about his claims. The second spans from April 20, 2021 to October 3, 2021, which is the timeframe between speaking with an attorney and filing a charge with the EEOC. Defendants contend that Plaintiff did not act diligently during either period, arguing that the emails "demonstrate[] Plaintiff's lack of diligence in pursuing his claims against Defendant[s] because [they] reflect[] that he did not follow-up with the EEOC after his intake interview with the EEOC on December 13, 2019 until April 20, 2021" and "then waited until October and November 2021 to follow-up with the EEOC again." (Doc. 45 at 2 n.3.)[21]

---

[21]     Although Defendants do not outright accuse Plaintiff of bad faith, they do indirectly suggest that Plaintiff has failed his "duty of candor to court," arguing that his allegations in the TAC about the timing of his EEOC charge provide "a different story as compared to his prior allegations on this issue." (Doc. 45 at 4 & n.6.) This argument is unpersuasive. In the FAC, Plaintiff alleged that the EEOC provided "misleading" instructions on the "next steps necessary to file a charge." (Doc. 12 at 23 ¶ 27.) This allegation is not inconsistent with his allegation, in the TAC, that the EEOC investigator misinformed him about the need to retain counsel before filing. Given that Plaintiff is a *pro se* litigant, it is

"The standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). Initially, Plaintiff diligently pursued his claims by attending an intake interview with the EEOC on December 12, 2019, shortly after his employment ended in November 2019. *Josephs*, 443 F.3d at 1054. After the interview, Plaintiff continued to diligently pursue his claims by consulting with an attorney when he "finally . . . had some financial means" to do so, which was on April 20, 2021. (Doc. 44 at 3.) Admittedly, the 18-month period that Plaintiff waited before consulting with a lawyer is significantly longer than that in *Josephs*, where the plaintiff filed a charge less than six months after his initial meeting with the EEOC. 443 F.3d at at 1058. However, Plaintiff's proffered reason for this delay—the financial burden of obtaining legal counsel—is reasonable. Assuming that Plaintiff was unable to afford a consultation with an attorney before April 20, 2021 (as he asserts), his actions leading up to that date were consistent with diligence.

Whether Plaintiff acted diligently after April 20, 2021 presents a closer question. After the legal consultation, Plaintiff was on notice that the EEOC investigator's instructions were inaccurate and that he needed to file a charge with the EEOC to pursue his claims. Initially, Plaintiff acted diligently by reaching out to the EEOC on April 22, 2021 (two days later) about his case. During these discussions, Plaintiff seemed to acknowledge the need to act quickly: "I will get it [charge form] completed as quickly as I can and send it back." (Doc. 44 at 1.) However, Plaintiff then waited until October 3, 2021 to file a formal charge. At first blush, this five-and-a-half-month delay seems less than

---

plausible that he simply did not know, until reading the Court's order, that he should describe the misleading advice in more detail. (Doc. 30.) Likewise, the fact that "Plaintiff abandon[ed] all arguments regarding COVID-19's alleged impact on his ability to timely file his charge" (Doc. 45 at 7) does not demonstrate bad faith—if anything, it seems plausible that COVID-19 *did* influence Plaintiff's circumstances during the limitations period; however, after reviewing the Court's explanation that the COVID-19 pandemic does not justify equitable tolling unless the pandemic specifically prevented Plaintiff from filing a charge within the limitations period (Doc. 30 at 20-22), Plaintiff removed the COVID-related allegations from his pleading because he now understood they were not legally relevant.

diligent.  However, Defendants have not identified any case or legal principle suggesting that, as a matter of law, such a delay is inconsistent with diligence.  Under traditional tolling principles, assuming that the statutory deadline was tolled from December 12, 2019 (the date of Plaintiff's EEOC intake interview) until April 20, 2021 (the date of Plaintiff's consultation with an attorney), Plaintiff's charge would be timely.  In that scenario, the statutory deadline would have run from Plaintiff's termination (November 27, 2019) until the day he received the misleading information from the EEOC (December 12, 2019) and then would have been tolled until April 20, 2021, resulting in a new deadline of January 30, 2022.  *Cf. Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997) ("Leorna had neither actual nor constructive notice of the filing period at that time.  Therefore, the forty-five-day period within which to contact a State Department EEO counselor was tolled until September 1993, when Leorna retained counsel.  Leorna then had forty-five days within which to contact an EEO counselor regarding her claim of discrimination.") (citation omitted); *E.E.O.C. v. AN Luxury Imports of Tucson Inc.*, 2014 WL 11662998, *3-4 (D. Ariz. 2014), *adhered to on reconsideration*, 2014 WL 11609732 (D. Ariz. 2014) ("In tolling statutes of limitation, courts have typically assumed that the event that 'tolls' the statute simply stops the clock until the occurrence of a later event that permits the statute to resume running. . . .  When a statute of limitations is tolled the days during a tolled period simply are not counted against the limitations period.  Once claimant Bannes learned from Granillo that his charge had not been filed, the 300-day limitations period resumed and it was incumbent upon claimant Bannes to file his charge of discrimination within the remaining limitations period.") (internal citation omitted).  Additionally, nothing in Investigator Miner's April 2021 emails to Plaintiff indicated that he needed to act quickly to preserve his claims—instead, Investigator Miner simply stated that although Plaintiff's deadline to file a timely charge "expired on September 24, 2020," if he wished to file a charge against Defendants, she would "send [him] the form to complete" and, after the EEOC "receive[d] the completed form," they would issue Plaintiff a RTS letter, which would "allow [him] to file suit in federal court."  (Doc. 44 at 1-4.)

Although Plaintiff ultimately has the burden of alleging facts that, assumed true, could support equitable tolling, *Kwai Fun Wong v*, 732 F.3d at 1052, the Ninth Circuit has repeatedly emphasized that a "district court may grant a 12(b)(6) motion to dismiss on statute of limitations grounds only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000) (internal quotation marks and citation omitted). *Accord Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006) ("Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue."). Here, when the TAC and the emails at Doc. 44 are taken together and liberally construed, Plaintiff "adequately alleges facts showing the *potential* applicability of the equitable tolling doctrine." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993). At this stage of the litigation, that is all that is required.

Accordingly, Defendants' request to dismiss Plaintiff's ADA claim for failure to exhaust administrative remedies is denied without prejudice as to Defendants' ability to reraise the argument at a later stage, after development of a fuller factual record. *See also Hoover v. Swift Transp. Co.*, 2019 WL 6135122, *3 (D. Ariz. 2019) ("[A] Rule 12(b)(6) order is typically not an ideal vehicle to address whether equitable tolling applies . . . ."); *Cha v. Kaiser Permanente*, 2015 WL 3758287, *1 (N.D. Cal. 2015) ("Cha has pleaded sufficient facts to demonstrate that she could be eligible for equitable tolling of the limitations period for her federal ADA claim, which would otherwise be time-barred. Thus, the Court will permit Cha's lawsuit to proceed on her federal and state disability discrimination claims."); *Stewart v. Rock Tenn CP, LLC*, 2015 WL 1883910, *3 (D. Or. 2015) ("Because tolling is a 'fact-intensive test,' it is usually not appropriate for consideration in a motion to dismiss and usually reserved for summary judgment or trial.").

### 2.   ACRA Claim

Under Arizona law, equitable tolling allows plaintiffs to extend an expired limitations period "if they have been prevented from filing in a timely manner due to

sufficiently inequitable circumstances." *McCloud v. State*, 170 P.3d 691, 696 (Ariz. Ct. App. 2007) (citation omitted).[22]  *See also Kyles v. Contractors/Eng'rs Supply, Inc.*, 949 P.2d 63, 65 (Ariz. Ct. App. 1997) ("Equitable tolling applies when the plaintiff is excusably ignorant of the limitations period and the defendant would not be prejudiced by the late filing.").  For example, in *Kyles*, the Arizona Court of Appeals found that equitable tolling was appropriate where the complainant's "right-to-sue notice incorrectly stated the deadline by which he had to file suit," causing him to initiate litigation more than 90 days after receiving his RTS notice.  *Id.* at 66 ("Kyles . . . was entitled to rely on the deadline in the notice from the [ACRD].  Kyles acted diligently by filing the complaint before the deadline set forth in the notice; the notice fails to mention the ninety-day limitations period."].)  *See also id.* at 65-66 ("Equitable tolling has been applied, though sparingly, where the right-to-sue notice confused the plaintiff; the notice incorrectly advised the plaintiff he had six years to file an action in district court; the plaintiff is misled and lulled into inaction by the EEOC; the EEOC letters failed to provide the plaintiff with adequate notice of when she could file suit; and the district court led the plaintiff to believe her defective filing was effective for purposes of the 90 day rule.") (internal quotation marks and citations omitted).  "Plaintiff bears the burden of establishing that a limitations period should be tolled."  *MCK Exports, LLC v. Wal-Mart Stores, Inc.*, 2014 WL 3700877, *6 (D. Ariz. 2014) (applying Arizona's equitable tolling rules).

For the same reasons as his ADA claim, Plaintiff has alleged facts (between the TAC and the emails at Doc. 44) that demonstrate a plausible entitlement to equitable tolling for his ACRA claim.  Assuming the 180-day charge-filing deadline was tolled from December 12, 2019 to April 20, 2021, Plaintiff's October 3, 2021 charge was timely filed.[23]

---

[22]    In their motion papers, neither side addresses whether equitable tolling is appropriate under Arizona law.  (Docs. 45-47.)

[23]    In this scenario, the charge-filing deadline would be October 4, 2021.  This date is based on the following calculations.  After Plaintiff resigned on November 27, 2019, the 180-day limitations period ran until December 12, 2019 (when Plaintiff met with the EEOC).  It was then tolled until April 20, 2021, resulting in a filing deadline of October 4, 2021 because October 2, 2021 (which was 165 days after April 20, 2021) was a Saturday. Ariz. R. Civ. P. 6(a)(3) ("Include the last day of the period unless it is a Saturday, Sunday, or legal holiday.  When the last day is excluded, the period runs until the next day that is

1   Accordingly, Defendants' request to dismiss Plaintiff's ACRA claim is denied without
2   prejudice as to Defendants' ability to reraise the exhaustion argument after development of
3   a fuller factual record.

4   IV.   <u>Statute Of Limitations</u>

5        As an independent ground for dismissal, Defendants argue that Plaintiff's ACRA
6   claim is time-barred under A.R.S. § 41-1481(D).  (Doc. 45 at 11.)

7        This argument misses the mark.  Section 41-1481(D) provides that "[i]n no event
8   shall any action be brought pursuant to this article more than one year after the *charge* to
9   which the action relates has been filed."  *Id.* (emphasis added).  The term "charge" indicates
10  that § 41-1481(D) limits the length of time between when a charge is filed with the EEOC
11  or the ACRD and the initiation of a lawsuit.  Context supports this interpretation.  *See, e.g.*,
12  *id.* § 41-1481(A) ("A charge under this section shall be filed within one hundred eighty
13  days after the alleged unlawful employment practice occurred.  A charge is deemed filed
14  on receipt by the division from or on behalf of a person claiming to be aggrieved or, if filed
15  by a member of the division, when executed by the member on oath or affirmation.  A
16  charge is deemed filed by or on behalf of a person claiming to be aggrieved if received
17  from the United States equal employment opportunity commission.").  Here, Plaintiff filed
18  a charge on October 3, 2021 and then filed suit on January 3, 2022, well within the one-
19  year limitations period provided by § 41-1481(D).

20       Defendants' argument may be that *if* Plaintiff had filed a timely charge under
21  § 41-1481(A), which requires a charging party to file a charge within 180 days of the last
22  day of alleged discrimination, then more than a year would have elapsed between the timely
23  charge and when Plaintiff initiated this suit.  But the plain language of the limitations period
24  in § 41-1481(D)—"no . . . more than one year after the charge to which the action relates
25  *has been filed*"—does not suggest that the one-year limitation in § 41-1481(D) could apply

26

27  not a Saturday, Sunday, or legal holiday."); Fed. R. Civ. P. 6(a)(1)(C) (same).  *See also*
    *Charley v. Ariz. Pub. Serv. Co.*, 2013 WL 781001, *2 n.2 (D. Ariz. 2013) (applying Rule
28  6(a) of the Arizona Rules of Civil Procedure to compute the limitations period for filing an
    ACRA claim).

to a hypothetical charge filing date.  Defendants do not provide, nor can this Court find, any authority supporting such an interpretation.[24]

Defendants also suggest that Plaintiff's ADA claim is time-barred, although their arguments on this point are somewhat unclear.  (Doc. 45 at 10.)  For one thing, Defendants do not request dismissal on this ground; instead, they assert the purported time bar as a reason why granting Plaintiff leave to amend his ADA claim would be futile.  (*Id.*)  Additionally, although Defendants cite the requirement that a discrimination claim must be filed in court within 90 days of receipt of an RTS letter (*id.*), they do not explain how that limit would bar Plaintiff's ADA claim here.  Plaintiff filed suit on January 3, 2022, less than 90 days after the RTS letter was issued on October 6, 2021.  Instead, Defendants seem to tie the 90-day limit to the 300-day exhaustion deadline, arguing that "Plaintiff did not file a timely charge, nor exhaust his administrative remedies, nor does equitable tolling apply, and his original Complaint was not filed until January 3, 2022."  (*Id.*)  However, for reasons discussed with respect to Plaintiff's ACRA claim, this interpretation of the limitations period is unavailing.  "[U]nder a plain reading of [42 U.S.C.] § 2000e-5(f)(1), the 90-day period in which a claimant may file a civil action begins when the EEOC gives a right-to-sue notice."  *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1108 (9th Cir. 2018).  *See also id.* at 1110 ("If the mere passage of time triggers not only the claimant's right to sue . . . but also the deadline by which the claimant must sue . . . , the EEOC's giving of notice . . . becomes an idle act.").

---

[24]   All of the cases referenced by Defendants addressed whether dismissal was appropriate where more than one year elapsed between when a charge was actually filed and when the litigation was initiated.  *Wood v. Univ. Physicians Healthcare*, 2014 WL 3721207, *13 (D. Ariz. 2014), *aff'd*, 657 F. App'x 643 (9th Cir. 2016) (ACRA claim was time-barred where "Plaintiff filed this lawsuit over a year after Plaintiff filed charges with the ACRD"); *McElmurry v. Ariz. Dep't of Agric.*, 2013 WL 2562525, *3 (D. Ariz. 2013) ("[I]t is clear that [McElmurry] filed her charge of discrimination with the Civil Rights Division on January 14, 2011.  That meant she had to file any lawsuit no later than January 14, 2012.  She filed this action on October 18, 2012, nine months after the date required by ACRA.") (internal citation omitted); *Strand v. John C. Lincoln Health Network, Inc.*, 2011 WL 1253408, *2 (D. Ariz. 2011) ("The Court agrees with Lincoln Health that Strand's ACRA claim is time-barred.  ACRA requires parties to file suit within one year of filing a discrimination charge with the Civil Rights Division. . . .  Strand filed with the Civil Rights Division on January 13, 2009.  She did not bring suit until August 9, 2010.  Her ACRA claim must therefore be dismissed without leave to amend.").

V.    <u>Failure To State A Claim</u>

Finally, Defendants contend that Plaintiff's ADA claim "does not state a claim" because it "is based on an alleged failure to accommodate" but "Plaintiff's allegations demonstrate he was accommodated, but not how he would have preferred." (Doc. 45 at 8.)[25]   Specifically, according to Defendants, Plaintiff "admits" that after "Plaintiff requested Dragon Naturally Speaking software," "he received an alternative accommodation—not holding him accountable to the two-minute time limitation to allow him additional time to complete his post-call notes." (*Id.*)

This argument is unavailing for several reasons.   First, Defendants assert that Plaintiff requested Dragon Naturally Speaking software for "productivity" reasons, but in the TAC, Plaintiff alleges that he requested the software because of "the physical toll typing takes on his body." (Doc. 39-2 ¶ 10.)  Although the ADA does not require an employer to offer the specific accommodation requested, it does require the employer to offer an accommodation that is "reasonable and effective." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).  Defendants do not explain how removing the time constraint is a "reasonable and effective" solution to the physical pain that typing allegedly causes Plaintiff.   Second, it is not clear that Plaintiff's ADA claim is limited to a failure to accommodate theory.   In his "Statement of Claim" section, Plaintiff indicates that the alleged discriminatory conduct includes: (1) termination; (2) failure to accommodate; (3) unequal terms and conditions of employment; and (4) retaliation.  (Doc. 39-1 at 4.) Considering Plaintiff's factual allegations, and in light of Plaintiff's *pro se* status, the Court interprets Plaintiff's claims as alleging that Defendants violated the ADA by failing to accommodate his disabilities, harassing him because of his disabilities, and terminating him (via constructive discharge) because of his disabilities.  Third, Plaintiff also alleges that he requested that Defendants accommodate his disabilities by allowing the security

---

[25]    Defendants do not request dismissal on this ground—instead, they merely argue that granting Plaintiff leave to file a Fourth Amended Complaint would be futile because he admits he was accommodated. (Doc. 45 at 8-9.)  However, because this argument touches on the merits of Plaintiff's ADA claim, the Court addresses it here in an abundance of caution.

1   guards to note the time at which he entered the building each day, which would serve as
2   his "starting time" (rather than the time he arrived at his specific workstation), but that his
3   supervisor would not agree to this arrangement.  (Doc. 39-2 ¶ 14.)  These allegations could
4   also form the basis of Plaintiff's failure to accommodate claim.  Accordingly, Plaintiff's
5   ADA claim is not dismissed.

6   VI.   Leave To Amend

7       Given the conclusions in this order, Plaintiff's alternative request to file a Fourth
8   Amended Complaint (Doc. 46 at 11) is denied as moot.[26]

9       Accordingly,

10      **IT IS ORDERED** that the Defendants' motion to dismiss (Doc. 45) is **granted in**
11  **part and denied in part**.  Plaintiff's claims under the Rehabilitation Act and the Tempe
12  City Code are dismissed without leave to amend.

13      Dated this 2nd day of June, 2023.

_____
Dominic W. Lanza
United States District Judge

---

[26]     Thus, to the extent Defendants asserted arguments against amendment that are not
relevant to the merits of Plaintiff's claims, the Court declines to address them.